### B. H. SMITH *v.* THE STATE.

1. CRIMINAL LAW. *Obtaining goods under false pretenses. Case in judgment.*
   S. was convicted of obtaining goods under false pretenses. The pretenses were specifically charged, and the facts proved were as follows: On August 8, 1876, S. opened accounts with three different merchants in M., purchasing from one of them $77.85, and from the others smaller amounts. Four days afterwards he applied, in the town of B., to B. S. & Co., the prosecutors, for credit. He stated to them that he was not trading with, or purchasing supplies from, any other merchant, and that he owed no debts except a small one to them, and $20 in T. Upon the faith of these statements B. S. & Co. opened an account with and sold him, at first, seventy-five dollars' worth of goods. In a few weeks he had increased his indebtedness to them to $150. On each occasion of pur chasing he was questioned as to the matters stated at the time of opening his account, and every time he affirmed what he had said then. But during this time he was buying goods in M., so that in six weeks he bought goods to the amount of $600 in B. and M. Within six months after his last purchase he went into voluntary bankruptcy, and paid none of his creditors. *Held*, that these facts authorized a verdict of guilty.

2. SAME. *Practice. Setting aside juror after being accepted.*
   A verdict of guilty on an indictment will not be set aside in this court because, on the trial, the court, after declaring a juror competent, and after he had been accepted by the defendant, reëxamined and discharged him, where by the second examination it was disclosed that he was a near neighbor of the accused, and under strong personal and pecuniary obligations to him, although the juror stated that he had not formed or expressed any opinion as to the guilt or innocence of the accused.
   55 MISS. — 33

3. Same. *False pretenses. Evidence.*

In the trial of one accused of obtaining goods under false pretenses, in representing to a certain merchant that he was not trading with any one, and was only indebted to him and one other, it is competent, upon the examination of a witness for the state, to introduce the itemized account of the defendant's indebtedness to the witness at the time the goods were obtained, he not being referred to in the defendant's representations as a creditor, as evidence tending to show that such representations were false and fraudulent.

4. Same. *False pretenses. Goods obtained at several times.*

If there is any distinction between obtaining goods by a false pretense directly made, and obtaining goods at several times under a contract into which the seller has been entrapped by a false pretense, it has no force in a case where, the goods being obtained at different times, the accused at each time repeated the false pretense. In such a case the sale of the goods will be referred to the false pretense thus repeated, rather than to the contract.

5. Same. *False pretenses. Not the sole inducement.*

On the trial of a charge of obtaining goods under false pretenses it is proper for the court to refuse to instruct the jury that, to warrant a verdict of guilty, they must believe from the evidence that the false pretenses alone induced the selling of the goods. It is sufficient if such pretenses constituted a material part of the inducement, even though other considerations entered into it, provided that without the false pretenses the credit would not have been extended.

6. Same. *False pretenses. Deceiving a man of ordinary prudence.*

It would be error in a court to instruct a jury that they should not convict the defendant of the charge of obtaining goods under false pretenses unless the pretenses charged were such as would have deceived a man of ordinary prudence.

7. Same. *False pretenses. True and false statements together.*

An instruction which charges that the jury shall not convict the defendant of obtaining goods under false pretenses where a part of the representations were true and a part false, unless they believe from the evidence that the goods were sold exclusively in reliance upon those which were false, is erroneous.

8. Same. *False pretenses. False and true statements disconnected.*

An instruction is erroneous which charges a jury trying an indictment for obtaining goods under false pretenses that, while the indictment may be sustained by proof of the falsity of one only of the several statements charged, this is only so where the statements are of disconnected and independent facts, and the false statement is exclusively relied upon in the sale of the goods.

Error to the Circuit Court of Rankin County.

Hon. A. G. Mayers, Judge.

The plaintiff in error was convicted of obtaining goods under false pretenses, from Busick, Stevens & Co., merchants, of the

town of Brandon, in Rankin County. On the trial, S. J. Mosely was presented for a juror, and, after being examined and pronounced competent by the court, he was accepted by the defendant. But after this the court reëxamined him and ordered him to stand asidè. B. H. McKinney, a merchant of the town of Morton, in Scott County, testified that the defendant had bought goods from him on August 8, 1876, and the itemized account of the defendant with the witness was introduced in evidence. The other facts in the case are stated in the opinion of the court.

*C. C. Miller* and *J. L. McCaskill*, for the plaintiff in error.

1. The juror Mosely was improperly ordered from the jury by the court. He had been examined fully by the court touching his competency, pronounced competent, and (the state having exhausted their peremptory challenges) was accepted as a juror by the defendant. He was finally made to stand aside, after much and rigid examination, not as to his competency, but as to whether he desired to claim the privilege granted him by the statute, of claiming his exemption. He had repeatedly stated to the court that, while his age would excuse him as a juror, he was willing to serve in that capacity, and not until the court had announced the astounding explanation of this statute, that " his desire to attend to his private business " amounted to claiming his exemption, was he made to claim his exemption from service. The defendant had accepted him as a juror, and was entitled to his services. While we understand and know it to be the duty of the court to see that a fair and impartial jury is impaneled, we are not prepared to believe that this court will uphold a resort to such extreme measures as this to deprive the defense of a juror previously declared competent by the court, and taken by the defendant. He had not formed or expressed an opinion, was no minister of the gospel, was under no such obligation as would render him incompetent, was not in the courtroom when summoned, had not come to town expecting to serve as a juror, and had heard nothing of the facts of the

case. As a matter of right, the defendant was entitled to the services of this juror, and we believe this court will so hold.

2. The itemized account of McKinney, of Scott County, certainly should not have gone to the jury as evidence, except to show that the defendant was indebted elsewhere at the time of the purchase from Busick, Stevens & Co. An account with McKinney, running through the entire year, is read as evidence of the defendant's intention to defraud Busick, Stevens & Co., and the court, in the fifth instruction for the state, instructs the jury that such purchases as the account shows to have been made were a " badge of fraud." This was clearly erroneous.

3. We call the especial attention of the court to the instructions asked by the defendant and refused by the court; they propound the law as declared by the law-writers, and should have been granted.

The first instruction was eminently proper, as developed by the testimony of Busick — that he agreed or contracted with the defendant to sell him goods during the year. The goods were purchased in pursuance of the agreement or contract. 2 Ld. Cr. Cas. 165.

The second instruction was undoubtedly proper. It is settled beyond dispute that the pretense must be the decisive cause of the transfer of the goods. *The People* v. *Jacobs*, 3 Law & Eq. Rep. 164 ; 2 Bishop's Cr. Law, 437 ; 3 Law & Eq. Rep. 386 ; Roscoe's Cr. Ev. 470, 472 ; 3 Hawks, 620 ; 4 Pick. 177 ; 11 Wend. 557.

The fifth instruction was improperly refused. The prosecutor must use common or ordinary prudence. Where there is any degree of culpability, or complicity, on the part of prosecutor, he cannot sustain the prosecution. 2 Whart. Cr. Law, sec. 2132. Busick was a partner of McKinney, and had ample opportunity to ascertain whether the defendant was indebted to McKinney, and could have inquired as to the condition of the defendant's crop.

Defendant's tenth instruction should have been given. Bu-

sick, in his testimony, stated that he would have sold the defendant goods, even if defendant had told him that he was indebted in a small amount elsewhere, provided he was not owing a merchant; thereby showing beyond a doubt that he did not rely on the only false pretense charged in the indictment, to wit, "that he was not indebted, except $20 in Trenton," etc.

The eleventh instruction asked for defendant, and refused by the court, propounds the law correctly, and should have been given. Roscoe's Cr. Ev. 472.

The statute, as we take it, is intended to punish a criminal offense, and not to be used as an engine for the collection of debts, however just. To suffer it to be used for that purpose would necessarily lead to great injustice and oppression.

The testimony of Busick shows that nothing was thought of this criminal prosecution until immediately after he had received a notice of defendant's bankruptcy. We contend there is nothing in the testimony to show a criminal intention on the part of defendant at the time of purchasing the goods, or afterwards; besides this, we think it clear that Busick did not rely upon anything else in the sale of his goods, except that defendant would make sufficient cotton to pay him. To here use the language of a distinguished judge, " The term ' false pretense ' is of great latitude, and may be made to embrace any and every false representation, made by a party fraudulently obtaining property from another, which a prosecutor will swear has induced him to part with his goods. Is this act to have a range so wide and sweeping as this, or is it to be limited in its operation? Although in ethics every misrepresentation is morally wrong, yet if so severe a standard of conduct is to be introduced into our Criminal Code, it is plainly to be seen that breach of contract and crime will scarcely be divided by an appreciable line, and that criminal tribunals will be employed in punishing infamously acts which have heretofore been understood as creating only civil liabilities."

The motion for a new trial should have been granted.

---

*T. C. Catchings*, Attorney-General, for the State.

1. The proof makes out a clear case, according to the authorities. " The rule may be broadly stated that any designed misrepresentation of the defendant's means, by which he obtains goods of another, is within the statute." Whart. Cr. Law, sec. 2085. "A misrepresentation as to defendant's means is within the statute." *Ib.*, sec. 2086 *et seq.* " Though there is a promise connected with the pretense of an existing fact, this promise does not take the case out of the statute." 2 Bishop's Cr. Law, sec. 424.

" While each particular pretense in which conviction is sought must be negatived, it is not necessary to negative all the pretenses. Any one proved and negatived is sufficient to convict." Whart. Cr. Law, sec. 2111. " If there be, however, the false statement of an existing fact, the adding to this of false promises does not take the case out of the statute. And this holds, even though the prosecutor would not have yielded to the pretense without the promise." *Ib.*, sec. 2119.

" It is not necessary to a conviction that false pretenses should be the sole inducement by which the property in question is parted with ; if they have a controlling influence, it is enough, although other minor considerations operate upon the mind of the party. And this is true even though the prosecutor would not have surrendered the goods solely on the pretense alleged." *Ib.*, sec. 2121. " It matters not that by investigation the falsity of the pretenses might have been discovered ; it is sufficient if they were believed and relied on." *Ib.*, sec. 2128 *et seq.* Tested by these rules, we find the case fully made out.

The instructions granted declare the law as we have shown it to be ; those refused were not correct statements of the law.

2. The continuance asked for was properly refused, as it is not shown that any effort had been made to have the witnesses present, by subpœna or otherwise.

3. The court properly rejected the juror Mosely, as it is

perfectly manifest that he was not a fair and impartial juror. If there is reasonable ground for believing that a juror will act under undue influence, it is sufficient ground for the court to set him aside. *McGuire's Case*, 8 Geo. 369. And the court has a large discretion in this matter, and its action will not be reversed by this court, except for violation of law or a grossly injudicious exercise of discretion.

CHALMERS, J., delivered the opinion of the court.

The plaintiff in error was convicted in the Circuit Court of Rankin County of obtaining goods under false pretenses, and sentenced to three years' confinement in the penitentiary.

The false pretenses alleged were four in number : first, that he had a good crop ; second, that he had, or would make, seven or eight bales of cotton ; third, that he had traded with no one during the year ; fourth, that he owed no debts, save one to the party to whom he made the representations, and another debt of $20 to a person in Trenton, Smith County, in which county he lived.

As to the first statement, to wit, that he had a good crop, it was neither negatived in the indictment nor by the evidence, and may, therefore, be disregarded. As to the second, to wit, that he had, or would make, seven or eight bales of cotton, it was charged in the indictment in the alternative, and was, at most, a matter of opinion as to the probable yield of his then growing crop, and it is not shown to have been either a false or unreasonable expectation on his part. On all of these grounds the charge must be left out of view. The third and fourth pretenses, as to his not having traded elsewhere, and as to his existing indebtedness, were properly laid in the indictment, and were sustained by the proof.

The plaintiff in error was a man of small means, engaged in farming on a limited scale. His usual crop, with a favorable yield, amounted annually to six or seven bales of cotton. On August 8, 1876, he opened accounts with three different merchants in Morton, Scott County, making purchases from

one of them, on that day, to the amount of $77.85, besides smaller amounts from the other two. Four days afterwards he appeared in Brandon, Rankin County, and applied for credit to the prosecutors in this case. He was closely questioned as to his means and indebtedness. He stated that his crop was good; that he would make seven or eight bales of cotton; that he was trading with, or purchasing supplies from, no other merchant; and that, with the exception of a small note then held against him by the prosecutors, and the sum of $20 due in Trenton, he owed no debts. On the faith of these statements an account was opened with him, and on that day he purchased seventy-five dollars' worth of goods on a credit. He came back twice afterwards, within a few weeks, and increased the indebtedness to $150. On one of these occasions the liberality of his purchases attracted attention, and each time he was questioned anew. Each time he repeated, with earnestness, his former statements. During all this time he was purchasing also in Morton. The result was that, within six weeks, he bought in Morton and Brandon, together, goods to the amount of $600, which was considerably more than a full crop would usually have yielded him. In point of fact, he seems to have made less than two bales of cotton, but this was partly owing to an early and disastrous frost. Among his purchases, he is shown to have bought five barrels of flour in little more than a month. Within six weeks after the date of his last purchase from the prosecutors he went into voluntary bankruptcy, and none of his creditors were paid anything.

We think these facts fairly support the verdict of guilty, if no errors of law were committed on the trial, to his prejudice. We will notice the assignments of error discussed by counsel.

1. There was no error in refusing a continuance. No subpœnas had been issued for the absent witnesses, and no excuse was offered for the failure to do so.

2. There was no error in setting aside the juror Mosely. We do not agree with the learned judge below in the opinion

that the juror claimed his exemption by stating that he would prefer to attend to his own private business, while saying, at the same time, that he was nevertheless willing to serve, and did not claim his exemption; but we do agree with him in doubting whether the party was an impartial juror. Though he stated that he had neither formed nor expressed an opinion, he admitted that he was a neighbor of the accused; that he had heard the matter much discussed; that the accused had come by his house that morning and informed him that the trial was to come off that day; that thereupon he had come to town; and that he was under strong personal, as well as pecuniary, obligations to the accused, and to other parties indicted for the same offense.

It was held in McGuire's case that the judge might set aside a juror who had been accepted by both sides, upon discovering that he was under indictment for an offense similar to the one to be tried, though this formed, under the statute, no ground of challenge. We will not disturb the verdict here on account of the action of the court in this matter. *McGuire* v. *The State*, 37 Miss. 369.

3. There was no error in laying before the jury the itemized accounts of the accused with the merchants in Morton. The question at issue was whether the accused had knowingly, feloniously, and fraudulently made false statements, intending thereby to obtain goods upon the faith of such statements, and had actually so obtained them. The statements were that he was not trading elsewhere, and was not indebted. Everything which tended either to show their falsity, or to establish the willful fraud committed in uttering them, was competent.

4. There was no error in the instructions for the state.

5. The first instruction asked for the defendant was properly refused. It sought to draw a distinction between the goods obtained on the first day and those thereafter procured, and to refer the delivery of these latter to the contract made on the first day, by the prosecutors, to supply the accused

with goods during the year, rather than to the false pretenses which had induced that contract. If there is any sound distinction between goods directly obtained by a false pretense and goods obtained under a contract into which the seller has been entrapped by a false pretense, as was held in *Regina* v. *Gardner*, Dears. & B. C. C. 40 (1856), but which seems to be denied in Wharton's Criminal Law, 7th ed., volume 2, sec. 2124 *a*, the distinction is of no moment here, because it is shown that in the case at bar the accused was questioned anew at the time of each purchase, and each time repeated the false pretenses. It is evident from the testimony that, unless he had done so, he would not have obtained the further supply of goods, and, therefore, their delivery must be referred to the false pretenses thus repeated, rather than to the previous contract.

6. The second instruction asked for the defendant was erroneous in stating that the jury must believe that the false pretenses *alone* induced the selling of the goods. It is sufficient if they formed a constituent and material part of the inducement, even though other considerations contributed also to the result — provided that without them the credit would not have been extended. 2 Whart. Cr. Law, sec. 2121, and authorities ; *The People* v. *Haynes*, 11 Wend. 559 ; 2 Cr. Law, sec. 461, and authorities.

7. The fifth instruction asked for the defendant declares that no conviction can be had unless the pretense was such as would have deceived, and was likely to have deceived, a man of ordinary prudence. No facts proven warranted such a charge, nor do we believe the principle announced a sound one, though the authorities upon it are conflicting. The statute is made for the protection of the weak and unsuspecting, as well as of the wary and cautious, and the cheat who has defrauded his victim by a designed and fraudulent misstatement as to an existing fact should not be allowed to escape punishment, upon the ground that care and prudence would have protected the party from its consequences. It

may be, as said by some of the authorities, that where the carelessness is so gross that the law will impute consent to the seller, no guilt would be incurred. 2 Whart. Cr. Law, secs. 2128–2131; *Norton* v. *The Commonwealth*, 11 Allen, 266.

8. The tenth instruction asked for the defendant announces, in substance, that no conviction can be had if a part of the statements made were true and a part false, unless the jury believe from the testimony that the goods were sold in reliance upon those which were false, and without any reliance upon those which were true; or, in other words, that the credit must have been extended upon the faith of the false statement, unaffected and unaided by the true one. The eleventh instruction declares that while the indictment may be sustained by proof of the falsity of one only of several statements, this is only so where the statements are of disconnected and independent facts, and the false statement thus independent of, and disconnected with, the others is exclusively relied upon in the transfer of the goods.

Neither of these instructions is supported by reason or well-reasoned decisions, though there are *dicta* in the books which seem to lend some countenance to them. It is rare that cheats content themselves with a single false statement of an isolated fact, and still rarer, perhaps, that they fail to weave some element of truth into their fraudulent devices. The tinge of truth gives color and currency to the lie, and thereby more readily entraps the person defrauded. It would be absurd to say that the single truth should sanctify the falsehood, and thus make the element which, by its presence in such a connection, was most dangerous save the falsifier from all punishment. It is equally irrational to require that the falsehood should have been, as to a fact disconnected with the true statement, and that the credit should have been based exclusively upon it.

Though truth and falsehood may be blended most cunningly together, and both combined may have induced the seller to part with his goods, yet if it appears that but for the falsehood he would not have done so, this is sufficient. The fact

that the seller, in fact, acted upon both will not save the accused, if he would not have so acted but for the falsehood. In other words, it is not necessary that the credit should have been given solely or exclusively upon the false pretense, but only that it should have been one of the material and controlling considerations, without which the goods would not have been sold. Wherever the proof comes up to this requirement, it can make no difference whether the falsehood is connected with the statement of a fact partly true, or relates to one wholly false. It is to be remembered, however, that in this case there was, in fact, no connection between the statements as to the crop and those relating to the trading and the indebtedness.

In his examination-in-chief the seller of the goods testified that he acted upon all the representations made, of which those relative to the crop must, as we have seen, be left out of view. Being asked, upon cross-examination, whether he would have sold the goods upon the faith of the statement about the crop even if he had been told that the accused was in debt, he replied that this would have depended upon the amount of the debts and the persons to whom due. Counsel insist that this answer shows that he sold in reliance upon the crop, and that the fact of indebtedness or non-indebtedness was not material. On the contrary, it only shows that the crop was a part of the inducement, and while it might of itself have been sufficient to have procured the credit if the debts had been small, and not owing to merchants who would compete with the prosecutors for the handling of the crop, it is manifest that the false statement actually made, as to the amount and character of the debts, entered into the extension of credit. The same may be said with reference to the false statement that the accused was not trading elsewhere, which seems to have formed quite an important factor in the matter, as, indeed, it usually does in transactions like this; and as to this, no qualifying expressions were extracted from the witness.

We perceive no error in the record; wherefore the judgment is affirmed.