MORRIS, PLAINTIFF IN ERROR, v. THE PEOPLE, DE-
FENDANT IN ERROR.

1. STATUTORY CONSTRUCTION.

Generally, statutes must be so construed as to carry out the evident
    intent of the legislature, and accord with the natural and reasonable
    significance of the words and sentences used.

2. SAME.

By a well settled rule of construction it is permitted to insert the con-
    junction "and" where it has been evidently omitted, or where its
    insertion is plainly necessary to give expression to the apparent
    legislative intent.

3. CRIMINAL LAW—SWINDLING.

To sustain a conviction under Gen. Stats., sec. 884, it is necessary to
    show that the representation of the defendant of his responsibility,
    wealth, etc., was false when made.

*Error to the District Court of Las Animas County.*

THE People prosecuted Adolph Morris, the plaintiff in
error, by information containing several counts, which
charged him with a violation of the following section of the
Criminal Statutes:—" If any person, by false representations
in writing of his own responsibility, wealth or mercantile
correspondence and connection, shall obtain a credit thereby,
defraud any person or persons of money, goods, chattels or
any valuable thing, or if any person shall cause or procure
others to report falsely of his honesty, wealth or mercantile
character, and by thus imposing on any person or persons,
obtain credit, and thereby fraudulently get into possession of
goods, wares, merchandise or any valuable thing, every such
offender shall be deemed a swindler, and on conviction shall
be sentenced to return the property so fraudulently obtained,
if it can be done, and shall be fined not exceeding one thou-
sand dollars, and imprisoned in the county jail not exceeding
six months." General Statutes, 1883, § 884.

The information and the proof show that the acts charged
to be criminal were these: In 1891, Morris was in partner-

ship with his brother, doing business as grocers in Trinidad, Colorado. About the month of October, Morris purchased his brother's interest with the purpose of carrying on the business thereafter for his own benefit at the same place. The firm had been doing business prior to that time with the Forbes Mercantile Company, whose organization as a corporate body under the statute is unquestioned. To secure for himself a credit which would enable him to successfully prosecute his enterprise, he called on the company and made a statement of his financial condition, which the company took as the basis of their estimate. The statement is as follows:—" City of Trinidad, County of Las Animas, State of Colorado, October 3, 1891; Adolph Morris makes this statement, which is true and accurate, of my assets and liabilities at this date, upon which I desire to purchase goods of the Forbes Mercantile Company. If any change occurs to lessen my responsibility or materially change my condition, I hereby bind myself to give the Forbes Mercantile Company immediately notice; otherwise I shall be held for transactions thereafter made, as under this statement, this standing good until notice of change. Am doing business under the name of A. Morris. The firm is composed of Adolph Morris, in the business of retail groceries. Insured for $3,000, which I will keep good to this amount."

It is conceded that the statement was absolutely true when it was made, and was a fair, honest and accurate representation of the financial condition of the accused person. It so far continued true for several months, that it is conceded no prosecution could have been based thereon. During the spring of 1892, Morris became embarrassed by divers losses which may be left unexplained and as indefinite as they are in the record; and in the month of April he made an assignment for the benefit of his creditors. This developed the fact to be that at the time when he made several purchases from the Forbes Company in April, the representation contained in the statement, had it then been repeated, would not have been true. It is conceded that Morris failed to in-

form the Forbes Company of any change in his condition, and bought his goods at that time in the same manner that he had theretofore. The record shows that the original statement was made to the Forbes Brothers, who were the responsible heads of the corporation, and that possibly some of the purchases were made from them. The testimony discloses that the general course of the dealing between Morris and the company was like that which ordinarily prevails in cases of this sort. Sometimes the goods were ordered directly of the company at their store, and sometimes the orders were given to the company's solicitors, who were in the habit of seeking orders by going about from store to store. On this case and other proof which does not alter nor change the record with reference to the propositions on which it is decided, Morris was convicted and sentenced. From the judgment of conviction, he prosecutes this error.

Mr. JOHN GORDON and Messrs. THOMAS, BRYANT & LEE, for plaintiff in error.

Mr. EUGENE ENGLEY, attorney general, Mr. ROBERT T. YEAMAN and Messrs. YEAMAN & PARSONS, for defendant in error.

BISSELL, P. J., delivered the opinion of the court.

The disposition of two questions out of the many urged by counsel and legitimately presented by the record will serve to confirm the rights of the plaintiff in error, and so construe the statute that the adjudication may serve as a precedent to prosecuting officers in the state.

That section of our criminal code which is cited in the statement first appears in the acts of 1861. It remained unchanged in the compilation known as the Revised Statutes of 1868, and reappears in the General Statutes of 1877 and 1883 in the same identical form. From the original act down to the statutes of 1883 there was always an omission of a

conjunction preceding the word "thereby," and a similar omission of any auxiliary verb preceding the verb "defraud." Of course, it is impossible to tell the source of the legislation or what occasioned these omissions. As a general proposition, it has always been recognized in this state that a large part of our early legislation was borrowed from Illinois, and the acts and decisions of that commonwealth have always been much referred to, to aid in determining what should be the proper construction of a particular statute. The act in question is precisely like the Illinois statute with the exception of the omission of the word "and" preceding the word "thereby." The conjunction is in the Illinois enactment and is not in ours—otherwise the two are identical. Great stress was laid in the argument on behalf of the plaintiff in error on the necessity to show intent to defraud—it being contended that in respect of this matter the court committed grave errors in the various instructions which it gave to the jury. On the other hand, the people insisted that the instructions were accurate expositions of the law, because the offense was committed by the obtainment of credit, whether any person was or was not defrauded of any valuable thing. One feature of the people's argument was based upon the apparent importance to be given to the omission of the copulative conjunction, and it was insisted that it must have been the purpose of the legislature to provide for the punishment of two crimes in the first part of the section. In other words, a crime which would be committed by the obtainment of credit on a false representation, whether anybody was defrauded or not, and one perpetrated by the making of a false representation whereby some person was defrauded of some valuable thing. No attempt will be made to determine the accuracy of the court's instructions in this particular, since the conclusion which the court has reached concerning the representation itself will determine the non-commission of any crime. But for the purposes already indicated the construction of the statute will be pursued, since the question is legitimately presented by the record, and the purpose of the

court will consequently be thereby accomplished. We cannot agree with the contentions of the people. All statutes must be so construed as to carry out the evident purpose of the legislature and accord with the natural and reasonable significance of the words and sentences used, if no violation be thereby done to any recognized canon of statutory construction. The conclusion at which we have arrived is not based upon any consideration of a necessity to defraud in order to commit a crime, where the statute directly provides that the obtainment of credit on a false representation without more, may constitute the offense. The profession well understands that where a party was indicted at the common law for a substantive offense, he could not be convicted on proof of an attempt; but that an attempt under some circumstances may constitute a crime, and the party be punished therefor when properly charged with the offense, there is no question. The particular statute under consideration here, however, as we conceive, requires the union of two elements in order to render the party guilty of the offense against which this particular law is aimed. The two sentences of the clause were in the original act of 1861, but were separated from that portion of the section which relates to the procurement of a false report by others by a semicolon, which divided it into two parts, and by a very natural rule of construction this circumstance would strongly support the position which we take concerning it. Wherever the same identical statute has been carried forward from the time of its enactment into all subsequent compilations and has remained unaltered in any of its features, the court may look at the original act for the purposes of determining whether they have the right to apply a very well settled rule concerning the construction of statutes, which permits the insertion of the conjunction "and" where it has been evidently omitted, or where its insertion is plainly necessary to give expression to the apparent legislative intent. Potter's Dwarris on Statutes and Constitutions, chap. 7, p. 199.

Unless this rule be applied to the present statute, the first

paragraph of the section which relates to the obtainment of credit by false representations made by the person charged with the crime is incomplete, ungrammatical and lacking what is manifestly necessary to the natural, obvious and accurate expression of a legislative purpose.

The idea is very strongly supported by the impossibility to insert the word " or," or to treat the last clause of the first paragraph as separate and distinct from the first sentence ending with the words " shall obtain a credit." Had this been the legislative intention, grammatical construction renders it necessary that the auxiliary verb " shall " should precede the verb " defraud," because wherever there is the disjunctive conjunction, and a statute is enacted for the purpose of providing punishment for crimes which occur in the future, the word " shall " is the almost universal and natural auxiliary used in the legislative declaration. Had the auxiliary " shall " preceded " defraud," then the necessary and natural purpose of the sentence would be to provide for the punishment of two distinct crimes which might be committed by the obtainment of credit without damage, or the obtainment of credit to be followed by the procurement of some valuable thing. An insignificant alteration in the phraseology, or the omission of a word of this description in the adoption of a statute of another state, or in the revision of a statute, does not necessarily imply an intention to alter the construction of the act. It is equally settled that wherever there is an apparent mistake on the face of a statute the character of the error may often be determined by reference to other parts of the enactment, which may always be legitimately referred to in order to determine its legitimate construction. When the section under consideration is examined, it will be observed when we reach that portion of it following the disjunctive conjunction " or," which provides for the punishment of a crime which has been committed by the procurement of others to make false report, it is distinctly enacted that the obtainment of some valuable thing, whereby some person is defrauded is an essential ingredient of the offense.

It must be true where one section of a statute declares an act to be criminal whether done by one's self or by another by procurement, and provides the same punishment for both forms of the offense, and one subdivision clearly requires there should be proof that another has been defrauded, and the same requirement would be an indispensable ingredient of the other but for the evident omission of a copulative conjunction which is indispensable to an accurate, grammatical construction of the statute, no violence is done to any canon of construction to insert it to supply this evident omission. We therefore conclude that the statute is to be read as though the word "and" was inserted between the words "credit" and "thereby," and the offense can only be committed by the obtainment of credit on false representations coupled with proof that as a result of it some person has suffered harm.

The resolution of the other inquiry suggested at the outset will determine the rights of the plaintiff in error. The matter is not wholly free from difficulty, and the case is apparently one of first impression. It is not difficult of solution when the character of the legislation is considered, and the nature of the offense legislated against is carefully kept in view. If the states in their legislation on this subject had only provided for the punishment of the well known and thoroughly understood common law crime, very little difficulty would have been experienced in enforcing the statutes, and in determining whether or not the offense charged was within the terms of the legislation. In many states, however, as in ours, the law-making bodies have seen fit to create many new offenses which may be committed in divers ways by ingenious assaults on the confidence of the mercantile community. Of this, our quick, sagacious and far-seeing merchants have not been slow to take advantage. Upon these statutes, there has been built up in modern times a practice, which has not always been made the subject of judicial commendation, to bring a large portion of all mercantile transactions apparently within the scope of the criminal

statutes. By this means, the merchant is able not only to resort to the civil tribunals for the purpose of enforcing his debts, but frequently to compel profitable compromises by instituting prosecutions of which the purpose is rather the collection of debts than the enforcement of the laws of the land. Under these circumstances, wherever it is charged the defendant has been guilty of a crime created by a statute directed against that class of offenses known as obtaining goods by false representations, it may be said to be a prevailing rule of judicial decision to require that the proof must bring the case clearly and distinctly within the terms of the act, holding the state probably to stricter and more satisfactory proof in these cases, than in the case of crimes more dangerous to the safety of the person or the property of the citizens. Notwithstanding this fact, the courts never hesitate to enforce these statutes by proper judgments when the case is clearly brought within the language of the act, and is evidently within the mischief which the statute seeks to prevent. It cannot be seen that the present case is brought even remotely within the purview of the statute, or that the acts proven can legitimately be taken as included in the evil against which the legislation was directed. Ever since the King's Bench attempted to define the offense of cheats at the common law or to interpret the subsequent parliamentary acts relating to false pretenses, it has been a cardinal principle of all the adjudications that the ingredients of the offense are the obtainment of money by false pretenses with intent to defraud. If there was any failure on the part of the state to prove the falsity of the pretense, the prosecution necessarily failed. While it was never possible to absolutely prove a negative, yet the proof must establish a very strong possibility that the misrepresentations were false in fact, and by its force cast on the defendant the burden of establishing the affirmative if it was within his power to do so. It was equally indispensable that the proof demonstrate that the representations or the pretenses were the operative cause of the transfer of the goods, and must relate to an existing fact. It was

never permitted that the case should be *post hoc*, it must be *propter hoc*. These fundamental and primary principles are all that are requisite for the purposes of demonstrating that the present prosecution was without any legal basis, when it rested solely on the written representation which the thrifty merchants had required to be sworn to, with provident regard for what might happen in the future. On October 3, 1891, Morris stated to the Forbes Mercantile Company that he had certain assets and owed certain debts, and that his balance sheet showed a definite amount of capital which he had invested in his business. This was true at that date, and continued to be true for several months thereafter. It then follows that the statement on which the prosecution rests was not a false representation made for the purpose of obtaining credit, nor a false representation made for this purpose whereby the Forbes Mercantile Company was defrauded of its goods. It may be conceded that the Forbes Mercantile Company extended a line of credit to Mr. Morris in his grocery business, based upon the strength of this sworn statement, which he filed with them for the purpose of enabling them to decide what credit, if any, they would extend to him in their subsequent dealing. Had the representation been false, and a credit been thereby procured, and the Forbes Mercantile Company suffered harm, under proper proofs Morris could have been convicted, but, as is seen from this simple statement, the case fails to show one of the fundamental ingredients of the crime, to wit: the obtainment of a valuable thing by a false representation. A very learned and elaborate argument was made by counsel on behalf of the people to support the judgment of conviction on the theory of a continuing misrepresentation, somewhat on the theory of a continuing pretense, which finds support in the *Commonwealth v. Lee*, 149 Mass. 179; *Smith v. The State*, 55 Miss. 513; *Queen v. Martin*, First Law Reports, 56.

We regard the two cases as wholly distinct and separate, and the principle of those cases to be totally inapplicable to the case made by the record. Those decisions proceeded up-

on the theory that where there is a false representation upon which the vendor places reliance, and because of the confidence begotten by the statement he subsequently delivers the goods which the cheat has ordered, whether the goods were or were not in existence at the time of the making of the statement, the pretense being shown to be the operative cause of the transfer, the case shall be brought within the principle of *propter hoc* and the party adjudged guilty.    It seems to us that the case can be well justified upon legal principles, and that there need not be an absolute concurrence in point of time between the false pretense and the delivery of the goods.    It is simply essential that the party make a false statement, and the proof show that on account of it the goods were transferred. In other words, the misrepresentation must be the operative cause of the transfer.    In this case, no such connection was made by the proof, nor except by legal fiction or intendment can it be adjudged that the party was guilty of the crime. When the state concedes that the representation was absolutely true, and they seek to prove their case by showing that months afterwards the statement was not a true representation of Morris's financial condition, this truthful representation of his cannot be so rendered false by proof that there was a change in his financial condition, which he failed to report according to the terms of the promise contained in the original writing, as to sustain a prosecution.    The promise was for some purposes undoubtedly operative, and morally speaking it might be there was a failure on the defendant's part to observe that strict rule of morality which begets unlimited commercial confidence ; but in this case the criminal law does not happen to be auxiliary to the ethical code.    There was an entire absence of an attempt on the part of the state to prove that at the time of the various purchases which were charged to be offenses he made any statement whatever, either to the principal officers of the company or to the persons from whom he bought the goods.    The company simply took the statement as the basis for their line of credit, and relying apparently upon the solvency and financial ability of the de-

fendant, proceeded afterwards to deal with him as with merchants generally, and without inquiring of him concerning his financial condition. Subsequent to the original writing, he made no statement whatever to any person, either true or false, concerning his financial condition, and it cannot be held that a representation, true when made, can by any intendment of construction, or by a promise contained in it, be held to be a representation which shall continue to be true for all time, and be made under changed conditions the subject of a criminal prosecution. So far as known a judgment of conviction can only be supported by proof of a criminal act. The defendant was not shown to have committed any crime.

The judgment will be accordingly reversed and the cause remanded.

*Reversed.*