State ex rel. Thomason v. Temple.

STATE ex rel. THOMASON v. TEMPLE et al.

(*Nashville.* December Term, 1919.)

1. **TAXATION.** Husband liable for only 1 per cent. on property under $25,000 received from wife.

In view of preceding legislation, and notwithstanding Inheritance Tax Act, section 2, exempting property having a clear market value of less than $10,000 transferred to a wife, and to the direct descendants and ascendants, does not enumerate husband, it must be deemed, in view of section 3, subd. 1, declaring that, where the person or persons entitled are the husband, wife, or direct descendants, the tax shall be 1 per cent. on amounts from $10,000 to $25,000, that the Legislature inadvertently omitted the word "husband" from the enumeration in section 2, subd. 2, and hence the State can collect only 1 per cent. on property of a value of less than $25,000 received by a huband from his wife. (*Post, pp.* 469-472.)

2. **STATUTES.** Statute to be construed to obviate repugnancy or inconsistency.

A statute is to be construed so as to give effect and meaning to every part, and words must be modified, altered, or supplied so as to obviate any repugnancy or inconsistency. (*Post, p.* 472.)

Cases cited and approved: Ashley v. State, 124 Tenn., 684; Riggins v. Tyler, 134 Tenn., 577; Continental Oil Co. v. Santa Fe, 3 A L. R. 404.

3. **STATUTES.** In determining meaning recourse may be had to policy of Legislature.

For the purpose of determining the meaning, although not the validity, of a statute, recourse may be had to considerations of public policy and to the established policy of the Legislature, as disclosed by the general course of legislation. (*Post, pp.* 472, 473.)

State ex rel. Thomason v. Temple.

4. **STATUTES.** Statute may be construed with respect to spirit, intention, and purpose.

A statute may be construed where the language is not entirely clear with reference to the spirit, intention, and purpose. (*Post, p.* 473.)

Case cited and distinguished: Grannis v. Superior Court, 146., Cal., 247.

5. **STATUTES.** Apparent mistake on face may be corrected by reference to other parts.

Where there is an apparent mistake on the face of a statute, the error may be corrected by reference to other parts of the enactment. (*Post, p.* 473.)

Case cited and distinguished: Morris v. People, 4 Colo. App., 136.

6. **STATUTES.** Effect should be given to all parts; to avoid absurdity, or injustice, courts may resort to general view of entire act.

Effect should be given to every portion of a statute, but if a literal construction will make the act absurd, or lead to injustice, the courts may resort to construction from a general view of the entire act. (*Post, p.* 474.)

FROM HAMILTON.

Appeal from the Chancery Court of Hamilton County. —HON. W. B. GARVIN, Chancellor.

FRANK M. THOMPSON, Attorney-General, for the State.

CANTRELL, MEACHAM & MOON, for appellee.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

The primary question involved in this controversy is the proper construction and interpretation of certain provisions of the inheritance tax statute (chapter 46 of the Acts of 1919).

The bill charges that Mrs. Sarah H. Temple died testate at her home in Hamilton County on May 1,

1919, seized and possessed of a tract of land of thirteen acres, on which she resided; that by her will a life estate in said tract of land was devised to her husband, the defendant H. F. Temple, with remainder to others; that the American Trust & Banking Company was named executor and duly qualified as such; that the value of said life estate of the defendant Temple in said property was appraised at $6,523.29, and that the said defendant concurred in said appraisement; that the value of the entire estate of Mrs. Temple was appraised at approximately $25,000.

The question for determination is the amount of inheritance tax for which Mr. Temple is liable.

The state insists that he is liable for 5 per cent. on the appraised value, after first deducting an exemption of $1,000, which would be 5 per cent. on $5,523.29, or $276.16.

On the other hand, the defendant insists that he is only liable for 1 per cent. of the appraised value, or $65.23, which amount, with some additions not explained, in all $70.90, he tendered to the county court clerk before this suit was instituted.

The defendant demurred to the bill on the ground that, under a proper construction of chapter 46 of the Acts of 1919, the State was only entitled to collect 1 per cent. where the amount inherited is less than $25,000.

The chancellor sustained the demurrer, and entered a decree in favor of the complainant for $70.90, the amount tendered by the defendant, and taxed the complainant with the costs. From this decree the State has appealed, and has assigned errors.

The sections of said act pertinent to the inquiry herein are as follows:

(1) The first section thereof is, in part, as follows: "That a tax shall be and is hereby imposed and established for the general uses and purposes of the State, upon every transfer of property, real, personal or mixed, or any interest therein or income therefrom, in trust or otherwise, to persons or corporations, subject to the exceptions and limitations hereinafter prescribed, in the following cases, to-wit."

Then follow the eight cases referred to.

(2) That portion of section 2 of the act necessary to this inquiry is as follows:

"That there is exempted from the tax imposed in the foregoing section and from the operation of this act, the following, and no other:

"(1) Property of an intestate, testator, or grantor, where the whole estate has a clear market value of less than $1,000.

"(2) Property having a clear market value of less than $10,000, transferred to the wife and to the direct descendants and ascendants, or either of them, of the person from whom the transfer is made: Provided, however, that in determining whether any property falls within either of the foregoing exceptions, the estate the transfer of which may be the subject of taxation under this act, shall be treated as a whole, or as one transfer or sum, without reference to the number of transfers or parts of shares into which such estate may be subdivided."
,

(3) Section 3 is in this language: "That the tax on all transfers taxable under this act shall be at the rates following:

"(1) Where the person or persons entitled thereto are the husband, wife or direct descendants, or any child adopted as such in conformity with the laws of the State, or ascendants of the person making the transfer, (1.) one per cent. on amounts from $10,000 to $25,000; 1½ per cent. on the next $25,000 or any part thereof; 2 per cent. on the next $50,000 or any part thereof; 3 per cent. on the next $400,000 or any part thereof; 5 per cent. on $500,000 and all over that sum.

"(2) When the person or persons entitled thereto are not, the wife or direct ascendant or descendant of the person making the transfer, 5 per cent. on amounts from $1,000 to $50,000; 6 per cent. on the next $50,000, or any part thereof; 7 per cent. on the next $50,000, or any part thereof; 8 per cent. on the next $50,000, or any part thereof; 9 per cent. on the next $50,000, or any part thereof; 10 per cent. on $250,000 and all over that sum."

Analyzing section 2, it appears that an exemption of $10,000 is provided for (a) the wife, (b) direct descendants, and (c) direct ascendants, and that an exemption of only $1,000 is allowed all other persons.

Section 3 gives the rates of taxation that all beneficiaries are to pay, and it is the only section of the act which in any way undertakes to state such rates, and hence, in determining the question of the amount of liability, we are confined solely to this provision of the act.

Section 3 also divides those liable for an inheritance tax into two classes:

(1) Directs: (a) Husband; (b) wife; (c) direct descendants; (d) direct ascendants; (e) adopted child.

(2) Collaterals; that is, all other persons than those enumerated in subsection 1.

It is true that in subsection 2 of section 3 the legislature undertakes to rename those who are liable as "directs," and in so doing they omitted "husbands," which, in a literal sense, would make these two provisions contradictory or in conflict, but, having expressly stated in the first subsection that "husbands" *eo nomine* were to be classed with wives and made liable for only a direct tax, it could not be held that same was annulled or repealed by a subsequent general clause in which "husbands" were not expressly excluded, but where they were simply omitted. Such omission will be treated as an oversight or a clerical error, and the word "husband" supplied so as to make these two provisions harmonize.

We are further of the opinion that the husband is entitled to the same exemption as the wife, viz. $10,000. This was manifestly the intention of the legislature. While the act does not so state in express terms, it only provides that the husband shall pay on sums in excess of $10,000, and, since there is no provision requiring him to pay on less sums, it necessarily follows that he, to all intents and purposes, is exempt from liability on all sums under $10,000.

We have had a collateral inheritance tax law since 1891, and a direct inheritance tax law since 1909, and in every enactment the husband and wife have been placed in the same class and equal provision made for both. We see no basis, either in law, reason, or justice, for classifying the wife as a "direct" and the "husband" as a collateral; for making the wife pay 1 per

cent. and the husband 5 per cent. Theoretically, at least, they are one, and their accumulations are the result of their joint efforts. .

Considering our inheritance tax legislation from a historical standpoint, it would hardly be supposed that the legislature would have made so radical a change without expressly stating that husband and wife were to be differently classified, and no longer accorded that equality which they had enjoyed for twenty-eight years.

We are of the opinion that the word "husband" should also be added to subsection 2 of section 2. By so doing, and by supplying same in subsection 2 of section 3, you give effect to all of the provisions of the act, and make the various sections thereof harmonious. Further, you continue in effect the policy which the legislature has maintained for the past twenty-eight years in dealing with husband and wife relative to the inheritance tax, and you give effect to the intention of the legislature as it appears to us. Any other construction would invalidate a part of the act.

A few elemental rules in the construction of statutes support our conclusions.

A statute is to be construed so as to give effect and meaning to every part of the statute, and words may be modified, altered, or supplied so as to obviate any repugnancy or inconsistency. *Ashby* v. *State,* 124 Tenn. 684, 139 S. W., 872; *Riggins* v. *Tyler,* 134 Tenn., 577, 184 S. W., 860; note to *Continental Oil Co.* v. *Santa Fé,* 3 A. L. R., 404.

In 36 Cyc. 1111, it is said: "For the purpose of determining the meaning, although not the validity of a statute, recourse may be had to considerations of

public policy, and to the established policy of the Legislature as disclosed by a general course or legislation."

And in *Grannis* v. *Superior Court,* 146 Cal., 247, 79 Pac., 893, 106 Am. St. Rep., 26, it is said: "The provisions of the Code must be construed with a view to effect its objects, . . . and when the language used is not entirely clear, the court may, to determine the meaning, and in aid of the interpretation, consider the spirit, intention, and purpose of a law, and to ascertain such object and purpose may look into contemporaneous and prior legislation on the same subject and the external and historical facts and conditions which led to its enactment"—citing 26 Am. & Eng. Ency. of Law, 601-603, 623, 624, 632.

In *Morris* v. *People,* 4 Colo. App., 136, 35 Pac., 188, a statute was construed which penalized any person who should, by false representations, "obtain a credit thereby defraud any person." It was held that the word "and" should be supplied before the word "thereby," the court saying:

"An insignificant alteration in the phraseology, or the omission of a word of this description in the adoption of a statute of another State, or in the revision of a statute, does not necessarily imply an intention to alter the construction of the act. It is equally settled that wherever there is an apparent mistake on the face of a statute the character of the error may often be determined by reference to other parts of the enactment, which may always be legitimately referred to in order to determine its legitimate construction."

In 36 Cyc. 1116, it is said: "But, in obedience to the cardinal rule of ascertaining the intention of the legislature, if more than one significance may reasonably be attached to the language used, or a literal construction will make the act absurd, or will lead to injustice, the court may properly resort to construction."

Also on page 1128: "In construing a statute, the legislative intent is to be determined from a general view of the whole act, with reference to the subject-matter to which it applies and the particular topic under which the language in question is found.

"It is a cardinal rule in the construction of statutes that effect is to be given, if possible, to every word, clause, and sentence. It is the duty of the court, so far as practicable, to reconcile the different provisions, so as to make them consistent and harmonious and to give a sensible and intelligent effect to each."

It results that the decree of the chancellor will be affirmed.