STATE, EX REL. OTOE COUNTY AGRICULTURAL ASSOCIATION, APPELLEE, V. J. ED. WALLEN ET AL., APPELLANTS.

FILED JULY 6, 1928. No. 26592.

*George H. Heinke,* for appellants.

*D. W. Livingston, contra.*

Heard before GOSS, C. J., DEAN, GOOD and EBERLY, JJ., and CHASE, REDICK and WHEELER, District Judges..

EBERLY, J.

This, an action in mandamus, was brought by an organization styling itself the Otoe County Agricultural Association against the members of the board of commissioners of Otoe county, Nebraska, to require the latter "to include in the annual estimate for taxes for the year 1928, as a proposed levy, such part of one-fourth mill as will raise $2,000 for the use and benefit of relator as a society existing under section 6, ch. 13, Laws 1927, and thereafter at the time fixed by law, and in the manner provided by law, to include said amount for said purpose in the annual levy for taxes made for the year 1928."

In the pleading which constitutes the basis of the application it is alleged on behalf of the relator in substance that it was duly formed and organized under section 6, ch. 13, Laws 1927, and has, in all things, conformed to the requirements thereof, and "had adopted a constitution and by-laws for the government of said organization in conformity with law."

In addition to another defense pleaded, but the consideration of which is not necessary for our present purposes, the allegations of this pleading were denied by the respondent. On this issue there was a trial to the court who found in favor of the relator, and directed the writ to issue as prayed. Respondent appeals.

The real controversy between the parties turns on the proper construction of the following language of section 6, ch. 13, Laws 1927: "Whenever twenty (20) or more persons * * * shall have adopted a constitution and by-laws agreeable to the rules and regulations furnished by the usual and proper officers."

It is apparently conceded by the parties that a substantial compliance with this section, including the provision quoted, is a prerequisite to a valid organization, and to the right of relator to maintain the present action. The respondent insists that the statutory words, "furnished by the usual and proper officers," lawfully designate the state board of agriculture acting by and through their usual and proper officers. If this construction is correct, the appellant must prevail. The evidence in the record fails to establish that the constitution and by-laws in the instant case were not so adopted. The undisputed testimony of Mr. Severe, president of the relator, on this subject, is: "Q. Now you were present when the constitution and by-laws were adopted? A. Yes, sir. Q. Was the constitution and by-laws furnished you by the state board of agriculture? A. No, sir. Q. Was it ever submitted to the state board of agriculture for their approval? A. I couldn't tell you. It was the Cass county rules that we went by. Q. Had you ever submitted them to the state board of agriculture? A. No, sir. Q. And they were not furnished to you by the state board of agriculture? A. No, sir."

The form of the issues on which the case was submitted in the court below imposed the burden of proof upon the relator to establish a substantial compliance with the terms of the statute providing for its organization. In reference to Mr. Severe's evidence in the organization of relator,

"It was the Cass county rules that we went by," it may be said that a "Cass county agriculturel society was organized under a special act of the territorial legislature, approved January 25, 1856." If this is the society referred to by Mr. Severe, in view of the terms of the statute of its creation, obviously a compliance with its rules affords no basis for an inference that in so doing the requirements of the present law were met.

We, therefore, address ourselves to ascertaining the proper construction of the words, "shall have adopted a constitution and by-laws agreeable to the rules and regulations furnished by the usual and proper officers," as this is the real question involved in the appeal before us.

As preliminary to this consideration, it may be observed that there are few guides to construction more useful than that which directs attention to the prior condition of the law to aid in determining the full legislative meaning of the statutory change thereof. The legislative department is supposed to have a consistent design and policy and to intend nothing inconsistent or incongruous. *Cummings v. Everett,* 82 Me. 260.

Then, too, it is to be remembered that—"Agricultural societies are not corporations within the ordinary meaning of the term, but rather agencies adopted by the state for the purpose of promoting the interests of agriculture and manufacturing." *State v. Robinson,* 35 Neb. 401. See, also, *State v. Miller,* 104 Neb. 838.

Our first general legislation on this subject in this jurisdiction was "An act to encourage agricultural pursuits in the territory of Nebraska, approved January 12, 1860." It appropriated $300 to be awarded by the territorial board of agriculture as premiums in various branches of agriculture.

In 1866 (Rev. St. 1866, p. 3) there was adopted by the council and house of representatives "An act for revising, amending, consolidating and reenacting * * * laws of a general nature." Part 1 of chapter 1 of this act was devoted to the subject of agriculture. In section 1 there-

of appears the following: "Whenever twenty or more persons, residents of any county of the territory, shall organize themselves into a society for the improvement of agriculture within said county, and shall have adopted a constitution and by-laws agreeably to the rules and regulations to be furnished by the Nebraska territorial board of agriculture hereafter created, and shall have appointed the usual and proper officers; and when the said society shall have raised and paid to the treasurer * * * fifty dollars,"—it shall be entitled to receive financial support from the county as in said act set forth. Sections 2, 3, 4, 5 and 7 of this act provided, among other things, that societies thus organized were corporations; enumerated their powers and provided the manner, extent and purpose of the exercise thereof. Sections 8 to 11, following and inclusive, created the Nebraska territorial board of agriculture, referred to in the above quotation, defined its powers, duties and purposes.

It is plain from a reading of this act that sections 1 to 11, inclusive, constituted a complete plan for the promotion of agriculture, and together distinctly evidence a definite legislative policy on that subject. The county society, provided for in article 1 heretofore quoted, is expressly constituted a "subordinate society" to the territorial board. The chief officer of such "subordinate" society was, in terms, made an *ex officio* member of the latter. Annual meetings were provided for to be participated in not only by the members of the territorial board, but by the members thus *ex officio* created for the purpose of deliberating and consulting as to the wants, prospects and conditions of the agricultural interests throughout the territory. At these annual meetings the subordinate county societies were required to make reports in the manner prescribed.

In 1879 a further act was passed entitled, "For the government, support, and maintenance of the state board of agriculture," etc. (Laws 1879, p. 396), which, while retaining the fundamental plan on which the previous legis-

lation proceeded, amended, extended and amplified and made more definite the legislative intention embraced in the act of 1866 referred to. Under its terms the name "state board of agriculture" was substituted for the designation "Nebraska territorial board of agriculture," and the rights, powers and duties of county agricultural societies were more definitely enumerated, and the making of more complete and extended reports by the latter to the state board of agriculture was enjoined. Sections 2 to 11, inclusive, of this act of 1866, were repealed by the act of 1879, but section 1 of the territorial act of 1866 was retained. Excluding from consideration section 1 for the present, it may be said of this act of 1879 that, though the legislation in question has been subsequently amended in minor particulars and important additions made thereto, its provisions, so far as the general plan and policy are evidenced thereby, remain substantially unchanged.

The state board of agriculture still remains the ultimate, controlling agency which, in addition to supervising the holding of the state fair, gathers information, makes reports, and functions as contemplated by that act, and the county agricultural societies still retain the descriptive designation, "subordinate society," and are required to make their stated reports and carry on in the same subordinate capacity that was contemplated by the original act of 1879.

Section 1 of the territorial act of 1866 hereinbefore quoted though amended from time to time, was never repealed but has, at all times, constituted an essential part of this legislative plan. Indeed, the general policy of the state, controlling the manner and method of organization of "subordinate" societies, as evidenced by the territorial act of 1866, has been continued through all amendments and remains substantially unchanged in chapter 13, Laws 1927. Summarized, these organization requirements, thus continued in the statutes, are: (1) Twenty residents of any county; (2) organized into a society for the improvement of agriculture within said county; (3) adoption by

such persons so organizing of "a constitution and by-laws," the terms of which shall conform to the requirements imposed upon them from without the subordinate society; (4) the raising of $50 by the membership for society purposes annually.

In 1881 (Laws 1881, ch. 1) section 1 of the act of 1866 was amended by substituting for the words, "Nebraska territorial board of agriculture," the words, "state board of agriculture."

It is also to be noted that, from the time of its first enactment in 1866 continuously down to the adoption of the amendment of 1905, the language of the portion of this section pertinent to the question presented for decision in this case (excepting as to change of name in 1881) was: "Shall have adopted a constitution and by-laws agreeable to the rules and regulations furnished by the state board of agriculture, and shall have appointed the usual and proper officers."

It is quite obvious that this provision just quoted had a definite and important place in the legislative scheme before us. Through it there was available valuable information to those organizing subordinate societies. It was also, in fact, a statutory safeguard provided for the benefit of the taxpayer. Under its terms public moneys, devoted to this public purpose, were required to be expended, "agreeable to rules and regulations" prescribed by a disinterested public agency, the state board.

Then, too, the annual and stated reports required of the county society, after organization, not only provided a public source of information to those interested in the subject to which they related, but the provisions of the act of 1879 now carried as section 8, Comp. St. 1922, assured the submission of such reports of such a nature and in such form as afforded ample opportunity to the state board to check the compliance of the subordinate societies with the rules and regulations it had previously prescribed for their government.

It will thus be seen that the provision quoted not only

answered a definite public purpose but, indeed, was essential in carrying out a well considered public policy.

In 1905 this section was amended by chapter 2, Session Laws of that year. The subject of the amendment was expressed in the bill as "county aid," and its apparent object was to change the basis for the computation of the amounts due to county agricultural societies from their respective county boards as the public contribution to their support. But in the opening sentence of the body of this amendatory act, while the verbiage of the law theretofore existing was retained, the words, "by the state board of agriculture," and "shall have appointed," appear to have been omitted. The sentence which, in the old law, included the words last quoted, in this amendatory act of 1905 as passed read: "Whenever twenty or more persons * * * shall organize themselves into a society for the improvement of agriculture within said county, and shall have adopted a constitution and by-laws * * * furnished by the usual and proper officers," etc. The words last above quoted were carried through all subsequent amendments to this section unchanged and, as such, appear in chapter 13, Laws 1927.

What was the effect of this omission? The status of existing county agricultural societies thereafter remained unchanged. They are still "subordinate governmental agencies" reporting to their superior, the state board of agriculture. The latter is still authorized to adopt rules and regulations to which other provisions of the governing statute still require obedience and compliance on the part of the "subordinate" societies. Comp. St. 1922, sec. 8. Nor was the status of county agricultural societies, in process of organization, changed. They possessed the same, no greater or other rights, and were subject to the same limitations that had theretofore existed, under this amendment. Even their right to adopt a constitution and by-laws still remains limited and restricted to the same extent by the legislative requirement that the constitution and by-laws so adopted must be "agreeable to the rules and regulations furnished" from a source outside the subordinate

society. The exercise of this power to limit and restrict the action of the powers of the subordinate society necessarily involves the exercise of power by a superior. The statute of this state in express terms makes the county agricultural societies "subordinate" to but one governmental agency, viz., the state board of agriculture.

Indeed, the question here reduced to its elements is: Has the omission of the words referred to changed the source of the statutory restrictions involved? There can be no question but what the statutory restrictions theretofore existing still exist in their entirety. Conceding that the designation "usual and proper officers" as used in the act of 1905, and subsequent amendments thereto, considered in and of itself might be ambiguous, it is not necessarily so. This designation in that act is used solely wth reference to the "rules and regulations" to be furnished, and the sources that had usually furnished them. The only officers who ever furnished, or could have furnished, these "rules and regulations" prior to the adoption of the amendment of 1905 were the officers of the state board of agriculture. The moment the amendment of 1905 became a law, the designation employed therein, "usual and proper officers," could apply solely to the officers of the state board of agriculture.

As before the adoption of that amendment, so thereafter this state board continued the sole superior agency of the state to which the statute, in express terms, makes county agricultural societies subordinate. We do no violence to the language employed in construing the word "usual" in the connection in which it here appears, and especially in view of its close association with "rules and regulations" as referring to the course of proceedings pertaining to these matters as the same was established and carried on prior to the adoption of the amendment of 1905, which the latter evidences no intent to change.

This conclusion is strictly in harmony with, and in advancement of, the public policy evidenced by all of the statutory provisions relating to this subject when construed

as an entirety. Indeed, when the amendment of 1905 is analyzed and construed in the light of the circumstances then existing, and as part of the legislation then in force, keeping in view the manifest principles of its enactment, as evidenced by the other provisions therein contained, the conclusion seems inevitable that the omission of the words "state board of agriculture," and "shall have appointed the," was an omission due wholly to inadvertence, and, due to the fact that the attention of subsequent legislators has not been challenged to the situation, has been unwittingly carried through subsequent amendments and compilations. On this basis the well-established rule applicable to the situation is: "Where it appears from the context that certain words have been inadvertently omitted from a statute, the court may supply such words as are necessary to complete the sense and to express the legislative intent." 36 Cyc. 1127. See, also, *Orvil v. Woodcliff,* 64 N. J. Law, 286; *Jones v. Mail & Express Pub. Co.,* 30 N. Y. Supp. 335; *Morris v. People,* 4 Colo. App. 136; *Peoria & Pekin Union R. Co. v. People,* 144 Ill. 458; *Loverin v. McLaughlin,* 161 Ill. 417; *Clark & Co. v. Kent,* 80 Ill. App. 128; *Gustavel v. State,* 153 Ind. 613; *Landrum v. Flannigan,* 60 Kan. 436; *Commonwealth v. Barney,* 24 Ky. Law Rep. 2352; *Loper v. State,* 82 Minn. 71; *Earhart v. State,* 67 Miss. 325; *People v. Wells,* 65 N. Y. Supp. 319; *Territory v. Clark,* 2 Okla. 82; *Hutchings v. Commercial Bank,* 91 Va. 68; *United States v. Burr,* 159 U. S. 78.

At all events it follows, therefore, that the duty of the county agricultural society to adopt a constitution and by-laws agreeable to the rules and regulations furnished by the board of agriculture remains unaffected by the change of the wording first made in 1905, and which is continued in the act of 1927. It also follows that the duty of the state board of agriculture to provide, through its usual and proper officers, and furnish rules and regulations agreeable to which the constitution and by-laws of the subordinate society must be framed, still continues; and that substantial compliance with the rules and regulations thus fur-

nished is essential to the proper organization of subordinate county societies; that the relator has wholly failed to establish that the constitution and by-laws adopted by it are agreeable to such rules and regulations because of such failure was not entitled to the relief for which he prayed.

The judgment of the district court in awarding the writ of mandamus is, therefore, reversed and the cause remanded for further proceedings in accordance with this opinion.

REVERSED.